Good morning. Good morning. May it please the Court, my name is Robert Joseph Gaudet, Jr. I represent myself pro se. I would like to reserve any remaining time for rebuttal. The right to appeal from an order approving a class action settlement cannot be arbitrarily denied to class members through excessive appeal bonds that do not have any relation to the actual costs of an appeal. Class action lawyers should not be able to shield their award of millions of dollars in attorney's fees from scrutiny by threatening class members that they will each be required to post $200,000 or $25,000 in appeal bonds unless they put down their pens and walk away from the courthouse. Let me ask you this. I'm personally sympathetic to that point, but as I understand it, Judge, we're for whatever reason came up with this bond and you just simply didn't post it and you basically walked away. Is that right? You didn't do whatever you could do to further challenge it? That's not right, Your Honor. The Court ordered me to post $20,000, $15,000 and submit to a deposition to see if I could post $25,000. It did not give me the alternative of posting a lesser amount. It was not until its order sanctioning me that it said I didn't offer to post a lesser amount. No, that's what I'm saying. I never had notice of that. Right. After that, you didn't come to the Ninth Circuit and say, you know, vacate this bond, let me appeal or anything like that? I did do that, Your Honor. You did or did not? I did do that. You did do that. I did not. The Zissian standard is that you should not simply ignore a bond, and I did not simply ignore this bond. I did a few things. Number one, I filed a motion with this Court asking for it to be either stayed or vacated. And number two, I monitored the motion that was filed by Appellant Newhouse, who also asked What happened with your motion here? It was denied or stayed pending the merits panel for you to decide, sir. Okay. But this is what's happened here. Plaintiffs sought a total of $825,000 in appeal bonds from five different objectors, including $200,000 from me. The District Court imposed a total of $75,000 on five different objectors and granted the possibility of increasing it further to $115,000. Three of the objectors then dismissed their appeals. Before getting into this issue deeper, I'd like to review several key facts. I am a member of the class. I purchased a MacBook in Seattle. I received notice of the settlement. I reviewed the settlement, and I discovered that it paid nothing to me and others, but that it relinquished the chosen action of every class member. I could not find any estimate of the class's damages or what the settlement was worth overall to the class. Tell me I understand. You're a member of the class, but it gave you nothing. Correct. How is that working? Your Honor, it's the way they designed the claims process. I'm a member of the class, which is defined as every U.S. resident who either purchased a MacBook and or purchased a standalone adapter. So technically, either one suffices, the purchase of the MacBook or the adapter. The way they've gerrymandered the claims process, you can only submit a claim if you purchase a replacement adapter. So they cut everybody who just bought a MacBook out of the settlement process. They also say that if you bought your replacement adapter. So you're a member of the class, as I understand what you're saying. You're a member of the class that gets nothing. So no one who bought a MacBook with an adapter gets anything out of the settlement. Is that right? I'm not sure that's right. Correct. Unless that person also buys a replacement adapter and shows a proof of purchase for it. And if you do that, and you have to do it within three years. If you do it after three years, you don't get anything. And if you do that, you don't get compensation for the original adapter that came with your MacBook. You only get compensation for that replacement. Can you opt out of the class? Everyone can opt out of the class. But would I pursue a case on behalf of myself for $79? The whole beauty of the class action system is that we have a class representative who's obligated to fight on my behalf. And class counsel who are obligated to fight on my behalf. And a district court who's obligated to monitor class settlements to make sure it's fair. And listen to me if I have concerns about it. Here the judge rubber-stamped the settlement, including the fees. In this case, the fees were higher than prevailing market rates I noticed when I first reviewed the settlement. And in SINIFE awards, the class representatives were 143 times larger than the average compensatory awards to those people who did get money. In this settlement, 99.89% of class members received nothing. The class deficit we just covered. Although they are class members, 86% of class members are not even eligible to file claims because they did not purchase a separate adapter which is one of the requirements to file a claim. Only 0.11% of class members filed claims. The settlement pays 0.05% to 0.11% of estimated damages based on damages of $869 million. In my briefs, I mistakenly used the figure of 1.1% instead of 0.11% due to a calculation error. If you put it another way, looking at the damages is estimated at $2.607 billion. Then the settlement pays between 0.02% and 0.04% of damages. The people who did not keep their receipts for the replacement adapter are not eligible to participate in the settlement even though they are class members. People who bought separate adapters after three years like myself are also not eligible to participate in the settlement. A handful of lawyers are getting three times to seven times more money than everybody in the class, not 11 million people. The district court approved the settlement so I filed a notice of appeal. I have a constitutional right to appeal from an order approving the settlement. The due process clause of the Fifth Amendment says I shall not be deprived of my property which in this case is a choice of inaction without due process of law. In seeking appeals bonds, Plaintiff's counsel Craig Briskin filed a declaration which he stated, quote, plaintiffs anticipate expending about $25,000 plus tax for this component of costs, unquote. This is in Mrs. Newhouse's excerpts of record, pages 84 to 85. And Mr. Briskin described this as including incidental administration costs, filing fees, printing and copying of briefs and other submissions and discovery in relation to this appeal. Let's just take as a given they pulled this number out of the air. It doesn't bear any reality. What could the judge have posted? What kind of bond could he have required, if anything? Your Honor, the answer is listed in Rule 37, Rule 39. It's also listed in the circuit Rule 39-1 and in the bill of costs. And I put that before the district judge and I said if you calculate these numbers maybe you get $75 in photocopy costs plus $25 or $70 in photocopy costs or $75 in photocopy costs plus the remainder in mailing for a total of $100. That was an estimate. It may be wrong, it may be off, but it's certainly nowhere near $25,000. I think Mr. Frank in his brief gave an estimate of $750. That sounds to me a lot more reasonable than $25,000. But the district court ignored our arguments and rubber-stamped the $25,000 figure. It did push aside their request for attorney's fees of $175,000, but it rubber-stamped the request for $25,000 in costs, which means it implicitly adopted this declaration of credit brisket. And it did not analyze it, it did not leave any findings, it did not give any explanation. It simply said pay $25,000 in costs. Just to make sure I'm clear, you don't dispute that the judge had the discretion to order a bond, your quarrels with the amount. Is that fair? Your Honor, there are two aspects. If we step back a moment, there are three factors a judge must consider before ordering a bond. Ability to pay, merits of the appeal, and risk of nonpayment. Here he bunched together a few of the factors and he didn't treat them separately. In the first instance, should a bond be imposed? In the second instance, how much should it be? I think they're similar questions. Because if you're suggesting a bond of $200,000, that obviously affects the person's ability to pay it. Similarly for a bond of $25,000. So I think they're similar questions. Yes, I'm speaking primarily at the moment to the amount of the bond, which has no justification in the record. I see you're down to a minute and a half. Did you want to reserve, Mr. Gilly? Or do you want to use it up now? I guess I'll use it up. I guess I'll reserve, Your Honor. Okay, fair enough. Hello again. Hello again. This is the first time, Mr. Regard, that's appeared in this action. He resides in Ireland. He says that's where he teaches courses in Europe. He never showed up at the fairness hearing to present or defend his objections. He never showed up at the bond hearing. He completely disregarded the Court's order. The Court gave him a second chance and said, I'm going to find you in contempt if you don't. He completely disregarded it. That's another thing. I don't understand how a judge can find somebody in contempt for whatever Mr. Gooday did or didn't do. You know, we have rules that say a judge can't even find somebody in contempt without a hearing for coming late to court because you don't know why the person was late. They could have been locked in the elevator. How could he find him in contempt? Well, as one of the options to sanction him for disregarding the Court order, that's what he did. I know, and I don't see how that can possibly stand. I also don't understand how he came up with this $200,000 figure. Well, we had asked for $200,000 in the bond. So he splits the difference, or what? I mean, he just pulls the number? No, we argued, well, we argued, Judge Brewer disagreed with us, that attorney's fees were part of costs on the bond. He reduced it down to $15,000 and he, you know, under FRAP 17 entitled to make a bond. On what basis did you think a $200,000 bond was appropriate? We believe that you could add in under the fee-shifting statutes under the causes of action we brought that you could add in attorney's costs on appeal. And did you have a basis in law for making that argument? We did. And I will get you the site for that. Do you see how that could discourage people from appealing if you're supposed to require a bond of $200,000 just to get it to court? Well, in this case, first of all, Mr. Gaudet is a serial objector. He boasts on his website. He's not just a regular consumer. What's the relevance of that? What's that? What's the relevance of that? Because the Court does look at the merits of the appeal, not whether it's criminal or not. If he's right, he's right. If he's wrong, he's wrong. But how many times he's objected, I don't see what that has to do, except calling him names, you know. I'm not going to hold it against you that you're a practicing lawyer. And you do this a lot. I appreciate that. The bond was reduced to $15,000, and the Court is entitled to set any amount necessary to secure costs on appeal. And so what are the costs on appeal likely to be? Well, in this case, the Court ordered depositions because folks like Mr. Gaudet said he couldn't afford a bond of even, I think, $100 or $200. And so we were entitled to take their depositions to see if they had an ability to pay. And absent the deposition, what were the costs likely to be? It's impossible to know looking forward. I think that's the point. $200,000? There's no rule that says the Court needs to line item with those costs of viewing. How can the Court know looking forward? At the time, there were five objectors, and they were all, well, except for one, were serial objectors. The Court couldn't know how many motions we'd be facing on appeal. So $15,000 seems reasonable in light of the fact of the number of parties, the kind of parties they were. And moreover, the remedy that Mr. Gaudet had is under Azizian. And he could have, as Azizian, as this Court requests, he could have offered to tender $100. He could have offered something, and that would have preserved his right to appeal. He had options. He could have moved for a stay of the deposition. He didn't. He just disregarded the Court order's conclusion. He says he brought a motion to the Ninth Circuit that was. The Ninth Circuit. He did nothing in the district court. By that point, he had already been found in contempt. And importantly, regardless of the amount of the bond, he also claims that the settlement provided him a relief. And I think he had, like Mr. Frank's client, an adapter that worked for four years. And the Court asked, well, shouldn't you get something? And really, you go back to are they entitled to that? How is a decision here going to get them that? What kind of relief? They have no redressable injury, because even if you reverse the settlement and remand it back, how are they going to get a four-year relief for four years? It doesn't – it's just not – they're not entitled to that. That's not a redressable injury. And the fact of the matter is this settlement provided more than 15 million. I got a question. You say four years, he has no right to it, therefore there's no expectation he ever would have gotten anything out of the settlement. But I think you also told me that the guarantee expired after one year. On that theory, then, those who were between two years and three – one year and three years also had no right. So how do you reconcile your statement that he wasn't going to get anything with the proposition that anyone between year one and year three did get something? It's a great question. It's because it's a settlement. This is a settlement. We were – I promise you, we didn't go there. Please don't interrupt. But your point was, how could he expect to get anything more in a settlement? And you just said in response, well, how did the people between year one and year three get something? Oh, because it was a settlement. Right. We negotiated very – I don't understand your answer as to how he could expect nothing, given that the people between year one and year three had no legal right. It was a hotly contested mediation. I obviously won't go into the details of it. But he can go back and try to get better than we did, but that's not the test for whether this was a fair, reasonable settlement. We did the best we could. We were at that table fighting for class members. He was only entitled to a 90-day warranty on his replacement adapters. He got three years. That's a great settlement. And the relief that they both discount that they say this settlement isn't worth anything, the AppleCare – a two-year extended warranty that Apple provides for a product in this price range is $39. We put that information, that evidence before the Court. There's almost 10 million people in the class, and they all got that. Whether you use the extended warranty or not, that's $390 million they got in actual relief. Thank you. Thank you. Okay. Back to Ms. Maynard. Thank you, Your Honors. Every member of this class got a remedy from this settlement if they had a failed adapter. So if they had a failed adapter, they could within 180 days of the settlement, if their three-year winter had already passed, bring it in and get a free replacement adapter. Suppose they bought a new adapter over three years before? If they had a working adapter for more than three – if they had bought a failed adapter in the past that failed within the first three years of their purchase, then they were eligible for the cash refund, retrospective relief of the program. And it was outside the three years? The concept of the settlement was if the failure occurred within the first three years of your owning the adapter, then you could make a refund. But you said everybody gets something. If they're outside the three years, they don't get buckets, right? Everyone in the settlement who has a failed adapter within the first three years of owning it gets something. And so going forward, so as of the date of the settlement, anyone who owned one of these adapters, going forward, from three years from the date of their purchase of their adapter would have the right, if it failed, to bring it in and get a free one. And that was something that the settlement guaranteed them that they didn't have before. So there would be no point to – and one question, Judge Fletcher, you mentioned was the fact that the – that when the program was put in place, the previously existing program, there hadn't been – people hadn't owned the adapters for three years. So there was – the three years is a product of the settlement, but it reflects and the claim – there's several explanations in the record about why three years was chosen. In the plaintiff's supplemental excerpts of record at page 286, the plaintiffs explained to the district court that after consulting with their experts, they felt like three years was a reasonable time period for damages in a class of a product of this type that has a limited useful life. And the California law that says that extinct – that says in warranty-type claims you only – you don't have a claim at all past one year is based on the premise, this Court explains this in Clemens, and California courts have explained it in comparable cases, based on the theory that, you know, warranties – the whole point of warranty recognizes that products don't last forever, and adapters in particular, which get banged around, and there would be no point here to remand for Bluetooth findings. This Court has affirmed settlements like in Lane and in NVIDIA since Bluetooth where there weren't such findings. And it would be appropriate here, just like in Lane and in cases like Hanlon where the claimant says this record is sufficient to affirm the conclusion here that this settlement is fair, reasonable, and adequate on its terms, and it would be needless spinning to send it back to make conclusions that are already evident from this record, questions that the district court participated actively in the hearings and then concluded this was a fair, reasonable, and adequate settlement. And, you know, the class has already been waiting all this time to have the refunds. Until it's resolved, they aren't getting the refunds. Apple, on the strength of settlement, has been giving out free replacements, you know, under this program ever since the notice went out. Okay. Again, I'm not following this. This is my fault and not yours, but I understood you to say everybody's going to get something. Mr. Gaudet says he doesn't get anything. How is that? Well, Mr. Gaudet had a working adapter that worked for more than three years. So under this settlement, he's right. He gets nothing. Well, it's unclear exactly what his facts are, but had he at the time that the settlement was signed, was if he were in possession of a failed adapter, he could have brought that in for 180 days after the signing of the notice. If he still had it, he could bring it in and get an exchange. Get a free one, because it revived. If he threw it out because he bought a new one three years earlier, he's out of luck. He had a working adapter for more than three years, even by his attestation. So under the settlement, you can understand why he wouldn't be pleased, because he gets nothing. Well, if one of the adapters he bought was the model covered under this, then that could be covered going forward under the replacement portion of the program. The facts with respect to him are just a little unclear. Okay. Thank you. We would request that you affirm. I didn't catch the pronunciation of your last name. Would you help me again? I tried to pronounce it the French way, Godet, Your Honor. Godet? Godet. My grandfather went with Godet, so he was a French speaker. Okay. I don't mind variations. Your Honor, I just want to clarify that I live in the United States now. I moved back in January. I enjoyed Ireland for two years teaching, but I live here now. Number two, Your Honor asked the question, after depositions, what would the cost of the bond be? And you did not get an answer, so I'd like to provide you with that answer. In an order dated May 29th, 2012, the district court said, quote, the court grants plaintiff's motions in part and requires each objector to post an appellate bond in the amount of $15,000 per objector. That's the answer, Your Honor. And the order also said, quote, on or before June 18th, 2012, each objector shall be available for one in-person deposition regarding his or her ability to post a bond in the amount of $25,000. Upon completion of the deposition, plaintiffs may file a single supplemental motion seeking a higher bond per objector based on financial information gathered from the deposition, unquote. In other words, you post $15,000. After the deposition, you might have to post $25,000. And that was the end of it. Third, this concept of three years, where does it come from? You just heard that it was the plaintiff's idea. I read in the briefs that there's this concept of a natural life of three years. In other words, every adaptor is going to fail after three years. It only lives, as if it were a person, it only lives for three years, has a limited life. I certainly never knew that when I bought my Apple. There's nothing in the record to establish that fact other than what they say in their briefs. The district court made no findings that there's a natural life of three years. This is an artificial contrivance. If I still had my working adaptor, we were just told I could have brought it in and got a free replacement. I was never aware of that. In fact, when I bought my replacement adaptor, the store asked me to give them my old one, so I handed it to them. Finally, Your Honors, I'd like to say the district courts do not have legal authority to impose excessive appeal bonds to coerce objectors into dismissing their appeals at the request of counsel who want to protect their fees. This Court now has an opportunity to provide guidance that appeal bonds must be justified by independent findings and only imposed where they are warranted by law and the rules. They should not be used to close the doors of the courthouse or shield attorneys' fees from your scrutiny. Thank you. Thank you, gentlemen. Ladies, thank you as well. The case is ready to submit it. Good morning.
judges: Silverman, Fletcher, Bybee